TOMMIE LEE JONES,          )
                         )
        Petitioner,        )
                         )
    v.                   )          No. 4:12 CV 891 JMB
                         )
IAN WALLACE            )
                         )
        Respondent.     )

## MEMORANDUM AND ORDER

This matter is before the Court on Missouri state prisoner Tommie Lee Jones's *pro se* petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.[1] The undersigned concludes that the matter may be resolved on the existing record, without the need for an evidentiary hearing, the Petition should be denied and that no certificate of appealability should be issued.

## I. INTRODUCTION AND PROCEDURAL HISTORY

**A.**    **General**

Tommie Lee Jones (hereinafter "Jones" or "Petitioner") filed the instant § 2254 petition raising seven grounds for relief. Jones raises three different claims of ineffective assistance of counsel (with subparts). Jones also alleges that the State of Missouri failed to disclose favorable evidence which it was required to disclose. Jones further alleges a claim of prosecutorial misconduct for eliciting testimony regarding Jones's post-arrest statements to a police officer. Next Jones alleges that the trial court erred in overruling his motion for judgment of acquittal. Jones also alleges that two of the trial court's jury instructions were constitutionally defective.

---

[1] All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c)

The State of Missouri counters that most of Jones's grounds are procedurally barred and all of the grounds lack merit. Before addressing Jones's petition in detail, it will be useful to summarize the procedural background of this matter.

**B.**     **<u>Factual Background</u>**[2]

Jones and a co-defendant, Uvone Ward ("Ward"), were charged in the Circuit Court for the City of St. Louis with first degree robbery, armed criminal action, resisting arrest, unlawful use of a weapon, and tampering in the second degree. A jury convicted Jones of the robbery, armed criminal action, and resisting arrest charges. The remaining charges were dismissed by the State of Missouri. Jones was sentenced to 20 years imprisonment on each of the robbery and armed criminal action convictions, and 4 years imprisonment for resisting arrest. All of the sentences were to be served concurrently. As noted below, the State's theory of the case was that Ward committed an armed robbery and Jones drove the getaway vehicle – a pick-up truck. Using the State's terminology, Jones "acted in concert" with Ward.[3]

Jones's charges stemmed from the following events. At around 8:30 pm, on October 18, 2005, Mary Kathleen Becherer was walking home from a dinner with her husband, Bruce Bailey, who was going to drive home. Ward robbed Ms. Becherer of the contents of her purse at gunpoint and then ran away, passing Mr. Bailey's position. Mr. Bailey observed Ward run and then enter the passenger side of a maroon, full-size pick-up truck. The truck fled the scene at

---

[2] The factual background is taken primarily from the Missouri Court of Appeals decision in Jones's direct appeal following his conviction, the conclusions of law from Jones's State post-conviction motion, and the appeal from the denial of his post-conviction motion. (Resp. Exhs. F, G at 49-55, and J)

[3] Like the federal system, Missouri has eliminated the distinction between principals and those who aid and abet a principal. <u>See</u> Fed. R. Crim. P. 2 and Resp. Exh. F at 4 (citing <u>State v. Beggs</u>, 186 S.W.3d 306, 313 (Mo. App. W.D. 2005) ("Missouri has eliminated the distinction between principals and accessories, and now all persons who act in concert to commit a crime are equally guilty.")).

high speed. A person named Alfred Hargrove approached Ms. Becherer and told her that he saw Jones driving a red pick-up truck between 8:00 p.m. and 8:30 p.m., and that the passenger in that truck pointed a gun at Hargrove.

Earlier in the evening, shortly before Ward robbed Ms. Becherer, Ward got out of a red pick-up truck and robbed Ahmoy Nickolai at gunpoint. Ms. Nickolai did not identify the driver of the pick-up truck.

St. Louis Metropolitan Police officers observed a pick-up truck that matched the description of the getaway vehicle in the Becherer robbery. Officers followed the truck and then activated their lights and sirens in an attempt to pull over the truck. Instead, the truck drove off at a high rate of speed. The truck slowed down and officers observed the passenger (Ward) throw an object out of the window. The object, a pistol, was later recovered. The truck then stopped, Ward got out and fled the area. The truck again drove off at a high rate of speed. The truck eventually stopped and the police arrested the driver – Jones. Upon being arrested, and before the police asked him any questions, Jones uttered, "I didn't rob anybody" or "I didn't rob anyone." Ward's fingerprints were found on the truck but not the gun.

## C.     <u>Pre-Trial and Trial Matters</u>

Jones and Ward were indicted on charges related to the armed robbery of Ms. Becherer. Ward was also charged with robbing Ms. Nickolai. Jones and Ward were tried together. Prior to trial, Ward's counsel filed a motion to sever the defendants' trials. (Resp. Exh. A at 18) Jones's counsel did not file a separate motion to sever. The trial court denied co-defendant Ward's severance motion. (<u>Id</u>.)

During its case-in-chief, the State presented the testimony of Detective Scott Ecker, which included Ecker's in-court identification of Jones. Ecker affirmed his out-of-court

identification of Jones as the driver of the red full-size pickup truck who was arrested on the night in question. (Resp. Exh. A at 132) On direct examination, Ecker testified that, after the arrest, but before he asked Jones any questions, Jones stated, "I didn't rob anybody" or "I didn't rob anyone." (Id.) The defense did not object to this line of questioning.

The State also presented the testimony of Alfred Hargrove, which included an in-court identification of Jones. Although he might be characterized as a reluctant witness, Mr. Hargrove testified that he had seen Jones driving a red full-size pickup truck before it was stopped by the police. Prior to Trial, Mr. Hargrove stated that there was a passenger in the truck, who may have been brandishing a gun. Mr. Hargrove's trial testimony was equivocal on the matter. (Resp. Exh. A at 317-20) Mr. Hargrove also testified to his out-of-court identification of Jones.

Near the close of evidence, the prosecutor alerted the trial court to the fact that Ward had a "continuing motion to suppress identification." (Id. at 422) The trial court noted that "Defendant Jones also objects." (Id. at 423) Thereafter, the court ruled that the State had demonstrated by a preponderance of evidence that the identification evidence was reliable. Specifically, the trial court found that: (1) the identification procedures were not impermissibly suggestive; (2) the State had demonstrated that the witness identifications were the product of a sufficiently independent opportunity to view and remember the defendant; and (3) the police procedures did not taint the identification. (Id. at 423)

During Jones's case-in-chief, counsel did not present testimony from any witness and Jones declined to testify. (Resp. Exh. A at 420) Jones played two 911 tapes as evidence. (Id. at 423-424) At the close of all evidence, Jones moved for judgment of acquittal. (Resp. Exh. A at 424-25) The trial court denied the motion.

Several of the trial court's jury instructions are relevant to the present matter – Instruction Nos. 10, 11, and 12. In Instruction No. 10, the trial court explained that "a person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it." (Resp. Exh. B at 39) In Instruction No. 11, the trial court charged the jury to find Jones guilty of the armed robbery charge if Jones, "acting with" Uvone Ward, committed acts corresponding to the elements of the offense. (Id. at 40) In Instruction No. 12 the trial court charged the jury to find Jones guilty of armed criminal action if Jones, "acting with" Uvone Ward, committed the conduct corresponding to the elements of the offense. (Id. at 41)

The jury found Jones guilty of first-degree robbery, armed criminal action, and resisting arrest. (Resp. Exh. B at 46-48) Jones was sentenced to 20 years for each of the first two crimes and 4 years for the third crime, with all sentences to be served concurrently. (Resp. Exh. A at 478) Jones filed a motion for a new trial which the trial court denied during the sentencing hearing. (Resp. Exh. A at 477-78)

**D.     Direct Appeal**

Jones appealed his conviction to the Missouri Court of Appeals. Jones raised three points of error on appeal. First, Jones argued that the trial court erred in overruling his motion for judgment of acquittal at the close of all of the evidence, claiming there was insufficient evidence to support his convictions. Second, Jones argued that the trial court plainly erred in submitting Instruction Nos. 11 and 12 because they failed to comply with MAI-CR3d 304.04 and were not supported by the evidence. Third, Jones argued that the trial court plainly erred in removing the issue of punishment from the jury and sentencing him as a prior felony offender under Mo. Rev.

Stat. 558.016. The court denied each point but agreed to remove the prior offender classification from the judgment and sentence to avoid compromising Jones's eligibility for parole. (Resp. Exh. F)

With respect to the denial of Jones's motion for judgment of acquittal, the court explained that, because the motion was submitted before the jury was instructed, it would evaluate Jones's first point on appeal without considering the effects of Instruction Nos. 11 and 12. (Resp. Exh. F at 3) The court explained that it would affirm a denial of a motion for judgment of acquittal if, at the close of all evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense. (Id.) The court further explained that, because Missouri law does not distinguish between principals and accessories, the State had to show that a defendant associated himself with the venture or participated in the crime in some manner in order to make a submissible case of accomplice liability. (Id. at 4) The court considered the fact that Jones fled upon realizing the presence of police and his voluntary statement that he "didn't rob anybody" or "didn't rob anyone" as evidence of guilt. (Id. at 5) The court noted the fact that Jones knew the principal actor had robbed someone and that Jones acted as a getaway driver is sufficient evidence of participation to support a finding of accomplice liability. (Id.)

As to Jones's second point regarding the jury instructions, because Jones did not object to the instructions, the Missouri Court of Appeals conducted only a plain error review. According to that court, in order to overturn a verdict on plain error review, the error must constitute a manifest injustice. (Resp. Exh. F at 7) The State conceded that Instruction Nos. 11 and 12 failed to comply the Missouri Approved Instructions (MAI-CR3d) and associated the Notes on Use. (Id. at 9) The Missouri Court of Appeals explained, however, that the phrase "acting with" used

in the instructions resulted in the State shouldering a higher burden than the language of the approved instruction.  (Id.)  Furthermore, the court pointed out that Instruction No. 10 was read to the jury and properly set out accomplice liability.  (Id.)  Therefore, the court reasoned, the jury would have found Jones guilty even if there had not been an instructional error and thus that the asserted error was not outcome determinative.  (Id.)  Jones's third point of error in his direct appeal is not relevant to his habeas petition.

**E.**     **Rule 29.15 Post-Conviction Motion and Appeal**

Following his unsuccessful direct appeal, Jones filed a *pro se* motion for post-conviction relief, pursuant to Missouri Rule 29.15, raising a variety of claims.  (Resp. Exh. G at 4-27, 31-40)  The motion court appointed counsel to assist Jones.  Appointed counsel filed an amended Rule 29.15 motion.   Jones's amended Rule 29.15 motion raised several, related allegations of ineffective assistance associated with trial counsel's failure to sever Jones's trial from Ward's trial.  In particular, the amended motion alleged that trial counsel was ineffective for failing to: (1) file a pre-trial motion to sever defendants; (2) object at trial to the hearing of both cases together; (3) preserve a severance objection for appellate review; (4) object to evidence that would not have been admissible in the absence of a joint trial; and (5) preserve for appellate review an objection to evidence that would not have been admissible in the absence of a joint trial.  (Resp. Exh. G at 44)

The motion court denied a request for an evidentiary hearing, finding that Jones's grounds were refuted by the existing record.  The motion court denied Jones's amended Rule 29.15 motion.  (Resp. Exh. G at 50, 55)

Petitioner appealed the denial of his Rule 29.15 motion to the Missouri Court of Appeals. The court denied Jones's appeal in a summary order accompanied by a more detailed

supplemental memorandum.  (Resp. Exh. J)  The court concluded that Jones had not shown by a preponderance of the evidence that his trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances resulting in deficient performance that prejudiced the defendant.  (Id.)  The appeal of Jones's Rule 29.15 motion is discussed in greater detail below in the context of specific issues raised in this matter.

## II. ANALYSIS

### A.    Applicable Legal Standards

#### 1.    Standard of Review and Procedural Framework

The standards and limitations of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply to this Court's review of Jones's claims.  The Court's review is both "limited and deferential."  Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003).  Under the AEDPA, a federal court may not grant relief to a state prisoner's claim unless the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of facts in light of the evidence presented in state court." Cole v. Roper, 623 F.3d 1183, 1187 (2010) (citing 28 U.S.C § 2254(d)).  "A state court decision may be incorrect, yet still not unreasonable…." Id. (citing McGehee v. Norris, 488 F.3d 1185, 1193 (8th Cir. 2009)).  A federal court may grant habeas relief "only if the state court decision is both incorrect and unreasonable." Id.

"A state court decision is 'contrary to' the Supreme Court's clearly established precedent if the state court either 'arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law' or 'decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts.'"  Bucklew v. Luebbers, 436 F.3d 1010,1016 (2006) (quoting Williams v. Taylor, 529 U.S. 326, 412-13 (2000)).  "A state court decision is an 'unreasonable

application' of Supreme Court precedent if it 'identifies the correct governing legal principle…

but unreasonably applies that principle to the facts of the prisoner's case.'" Id.

Furthermore, "a determination of a factual issue made by a State court shall be presumed

to be correct' in a federal habeas proceeding." Cole, 623 F.3d at 1187 (quoting 28 U.S.C. §

2254(e)(1)). Finally, a state court decision involves an unreasonable determination of the facts

only if the presumptively correct factual findings do not enjoy support in the record. See Ryan v.

Clark, 387 F.3d 785, 790 (8th Cir. 2004).

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must

demonstrate both that counsel's performance was constitutionally deficient, and that he was

prejudiced thereby. See Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). "Judicial

scrutiny of counsel's performance is highly deferential, indulging a strong presumption that

counsel's conduct falls within the wide range of professional judgment." Bucklew, 436 F.3d at

1016 (citing Strickland, 466 U.S. at 689). Thus, "[u]nder Strickland, counsel's performance is

'measured against an objective standard of reasonableness,' and 'hindsight is discounted by

pegging adequacy to counsel's perspective at the time investigative decisions are made, and by

giving a heavy measure of deference to counsel's judgments.'" Id. (quoting Rompilla v. Beard,

545 U.S. 374, 380-81 (2005)). Under Strickland "[p]rejudice is shown by demonstrating that

counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the

result unreliable." Id. (citing Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)). To be entitled to

relief on a claim that trial counsel was ineffective, a petitioner must show both: (1) that

"counsel's representation fell below an objective standard of reasonableness," and (2) that there

is "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Strickland , 466 U.S at.687-88, 694. In order to

succeed, a petitioner must prevail on both prongs of the Strickland standard. See Worthington v. Roper, 631 F.3d 487, 498 (8th Cir. 2011) ("Failure to establish either Strickland prong is fatal to an ineffective-assistance claim.").

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard of review.'" Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 131 S. Ct. 1388, 1410 (2011)), cert. denied, Williams v. Steele, 134 S. Ct. 85 (2013). "Under AEDPA, we must then give substantial deference to the state court's predictive judgment [regarding Strickland prejudice]. So long as the state court's decision was not 'contrary to' clearly established law, the remaining question under the 'unreasonable application' clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect." Id. (citing Harrington v. Richter, 131 S. Ct. 770, 785 (2011)). "This standard was meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" Id. (quoting Harrington, 131 S. Ct. at 786)." "If the state court 'reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions,' then federal review under AEDPA is at an end." Id. at 832 (quoting Preno v. Moore, 131 S. Ct. 733, 740, 744 (2011)).

## 2.     **Procedural Default**

The State of Missouri contends that most of Jones's grounds for relief have been procedurally defaulted. To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and

legal theories in the state courts that he is attempting to raise in his federal petition.  Id. at 1021.

Claims that have not been fairly presented to the state courts are procedurally defaulted.  Id. at

1022 (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

A habeas petitioner may excuse a default in limited circumstances.  Claims that have

been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can

demonstrate cause and prejudice for the default, or a fundamental miscarriage of justice.  See

Coleman v. Thompson, 501 U.S. 722, 750 (1991); Wainwright v. Sykes, 433 U.S. 72 (1977).

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner

can show that some objective factor external to the defense impeded counsel's efforts to comply

with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  If a petitioner

has not previously presented the substance of a habeas claim and has no available procedure for

doing so because he has defaulted with respect to legitimate state requirements, federal courts are

barred from considering such a ground for habeas relief.  Grass v. Reitz, 643 F.3d 579, 584 (8th

Cir .2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc).

**B.**     **Grounds for Relief**

   **1.**     **Ground One – Ineffective Assistance of Counsel – Inadequate Preparation**

Jones's first ground for relief alleges that his trial counsel was constitutionally ineffective

because counsel failed to adequately prepare for trial.  More specifically, Jones contends that

defense counsel:  (a) failed to investigate potential alibi witness Keoshay Turman; (b) failed to

depose prosecution witness Alfred Hargrove; (c) failed to file a motion to suppress statements;

and (d) failed to file a motion to suppress Mr. Hargrove's identification of Jones.  The State

argues that Jones's first ground is procedurally defaulted.  The State further contends each

subpart of Jones's first ground lacks merit.

The Court agrees with the State – the record demonstrates that Jones procedurally defaulted his first ground because he failed to raise these questions regarding the adequacy of counsel's preparation on direct appeal or in his post-conviction proceedings. The record indicates that Petitioner raised this ground in his *pro se* 29.15 motion (Resp. Ex. G at 10), but the ground was not included in his amended 29.15 motion, (id. at 41-48), or on appeal from the denial of his post-conviction motion. (Resp. Ex. H) Ordinarily these omissions would constitute default and the claim would be procedurally barred. See Sweet v. Delo, 125 F.3d 1144, 1150 (8th Cir. 1997).

As "cause" for his default, Jones claims that he received ineffective assistance of post-conviction counsel. (EFC No. 1-1 at 2) Alleged attorney errors in initial-review collateral proceedings may, in certain instances, qualify as cause for a procedural default. See Martinez v. Ryan, 132 S. Ct 1309 (2012). "In order for ineffective assistance of counsel to excuse a procedural default, a prisoner must demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the [underlying] claim has some merit." Id. at 1318. In this case, the undersigned is not persuaded the Jones's claim that counsel failed to adequately prepare for trial is sufficiently substantial to satisfy Martinez.

To assess the substantiality of Jones's first ground, the Court will separately consider the merits of each component part of that ground. In this regard, the Court is mindful that it should consider Jones's claims individually, and is precluded from undertaking a cumulative effects analysis. See Cole, 623 F.3d 1183; Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006).

### a.      Failure to Investigate Alibi Witness Keoshay Turman

Jones alleges that Keoshay Turman would have testified she was with Petitioner from approximately 8-8:45pm.  (ECF No. 1-1 at 2)  Jones argues that Ms. Turman's testimony would have called into question Alfred Hargrove's the identification of Jones in a truck earlier in the evening.

In order to succeed on this claim, Jones must have been able to satisfy both prongs of the Strickland standard.  See Worthington, 631 F.3d at 498.  The Court concludes that Jones would not satisfy the prejudice prong because he cannot show that "… but for counsel's [alleged] unprofessional error, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694

To establish Strickland prejudice from counsel's failure to investigate a potential witness, "petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the trial.'"  Hadley v. Groose, 97 F.3d 1131, 1135 (8t h Cir. 1994) (quoting Stewart v. Nix, 31 F.3d 741, 744 (8th Cir. 1994)).  Plaintiff offers only speculation that Ms. Turman was available and what her testimony might have been.

Second, the case against Jones, even in the absence of Mr. Hargrove's identification, was strong.  As will be recounted below while discussing the sufficiency the evidence, the record shows that, shortly after the Becherer robbery, Jones was driving Ward in a pick-up truck that matched the description of the getaway vehicle.  Jones twice attempted to evade the police when they tried to stop the truck.  Ward tossed a pistol from the truck and fled.  Finally, upon being arrested, Jones voluntarily told the police that he had not robbed anyone.[4]

---

[4] Jones's counsel attempted to explain to him the strength of the police testimony and evidence in this case.  (See Doc 39-1 Exh. C)

Because the outcome of Jones's trial would have likely been the same if Ms. Turman had testified as Jones suggests, he has not shown a substantial claim under <u>Martinez</u> and, therefore, has not shown cause for his procedural default. In arriving at this conclusion, the Court notes that, in finding the evidence sufficient to convict Jones, the Missouri Court of Appeals relied heavily upon Jones's flight from the police and his post-arrest statements. (Resp. Exh. F at 5)

### b. Failure to Depose State's Witness Alfred Hargrove

Jones also argues that trial counsel was constitutionally deficient in failing to depose Alfred Hargrove before trial. Jones argues that, if trial counsel had deposed Mr. Hargrove, counsel could have used prior inconsistent statements to impeach the witness. The Court concludes that this argument lacks merit.

There is no doubt that Hargrove made inconsistent statements. The record of trial demonstrates that fact. (<u>See</u> Resp. Exh. A at 316-31) The fact that we now know Mr. Hargrove's trial testimony would vary from his prior statements to the police is not sufficient to condemn the performance of trial counsel. <u>See</u> <u>Bucklew</u>, 436 F.3d at 1016 (hindsight analysis is not appropriate). Of equal importance is the simple fact that, even if any reasonable attorney representing Jones would have deposed Mr. Hargrove, Jones cannot show any meaningful prejudice to his case.

Hargrove's inconsistent statements primarily related to whether the passenger in the pick-up (Ward) had a gun or not. Hargrove was extensively cross-examined by both defense attorneys. The effectiveness of the cross examination with respect to Mr. Hargrove's inconsistent statements cannot be doubted because it resulted in the State dismissing two of the

weapons charges in the middle of the testimony. (Resp. Exh. A at 321-322)[5]  Furthermore, as

discussed in greater detail below, although Mr. Hargrove identified Jones, the record indicates

that Mr. Hargrove previously knew Jones, thereby increasing the reliability and confidence in

that identification.

Therefore, although Jones makes a general allegation that he was prejudiced by counsel's

failure to depose Mr. Hargrove before trial, Jones has not demonstrated that the outcome of the

trial would have been affected had Hargrove been deposed.  Hence, Jones has not demonstrated

a substantial claim under <u>Martinez</u> sufficient to excuse his procedural default.

### c.  <u>Failure to Suppress Jones's Statements to Police</u>

Jones next claims that his counsel's failure to seek suppression of his post-arrest

statements put him at a disadvantage at trial.  As noted below, Jones raises two closely related

issues – prosecutorial misconduct for eliciting testimony regarding Jones's post-arrest

statements, and ineffective assistance of counsel for failing to object to the prosecutor's eliciting

such testimony.  Each of these arguments lacks merit because Jones's post-arrest statements to

police were voluntary and not made in response to custodial interrogation.  Therefore, the

statements were not suppressible under <u>Miranda v. Arizona</u>, 384 U.S. 436, 478 (1966)

("Volunteered statements of any kind are not barred by the Fifth Amendment.").  Moreover,

Jones has not offered any meaningful argument or analysis to suggest that his statements were

not voluntary or were somehow otherwise suppressible.  Stated differently, counsel would have

been justified in not seeking to suppress Jones's statements because such a motion would have

been denied.  Accordingly, Jones cannot demonstrate a substantial claim under <u>Martinez</u> and,

therefore, he has not shown cause to excuse his default of this issue.

---

[5]  The jury was recessed and the State dismissed the unlawful use of a weapon charge.
Thereafter, the jury returned and the cross examination of Mr. Hargrove continued.

### d.    **Failure to Suppress Identification Evidence**

Jones also argues that trial counsel's failure to suppress Alfred Hargrove's out-of-court identification of him resulted in an unfair trial.[6]  This argument also lacks merit.  "Clearly established Federal law, as determined by the Supreme Court of the United States, requires a two-step inquiry into photographic arrays."  Schawitsch v. Burt, 491 F.3d 798, 802 (8th Cir. 2007) (citing Manson Brathwaite, 432 U.S. 98, 114 (1977)).  "The first step is to determine whether the array was impermissibly suggestive.  If found so, the second inquiry is whether under the totality of the circumstances the array created a substantial risk of misidentification at trial."  Id.  See also Simmons v. United States, 390 U.S. 377, 384 (1968); Palmer v. Clarke, 408 F.3d 423, 435 (8th Cir. 2005).

Contrary to Jones's argument, the record indicates that the trial court considered Ward's objection to the identification evidence as being from both Ward and Jones, even if Jones's attorney did not make a separate motion to suppress.  (Resp. Exh. A at 422-23)  Furthermore, Jones has not explained how the identification procedure used in his case was impermissibly suggestive, let alone how the procedures might have resulted in a substantial risk of misidentification.  Therefore, Jones cannot show any prejudice, even if one were to assume his attorney was deficient somehow with respect to the identification evidence.

Furthermore, the record demonstrates that Mr. Hargrove was familiar with Jones before he identified him.  For example, Mr. Hargrove told the robbery victim that he had seen the driver

---

[6] Jones's point is in tension with his second ground, which is discussed below.  In his second ground, Jones contends that the State failed to disclose and suppressed the photo line-up evidence.  If that were true, then his attorney should not be faulted for failing to seek the suppression of undisclosed evidence.

of the truck earlier and identified him by name. (Resp. Exh. G at 43-44, 52)[7] "Even if it could be said that the identification technique used here was unduly suggestive, [the Eighth Circuit has] reasoned that 'when someone already familiar with a suspect is asked to comment on whether a recorded voice or image portrays the suspect … concerns [about the prejudicial effect of undue suggestiveness] are absent.'" United States v. Omar, 786 F.3d 1104, 1109-10 (8th Cir. 2015) (quoting United States v. Dobbs, 449 F.3d 904, 909-10 (8th Cir. 2006)).

Jones's contention that counsel should have filed a motion to suppress Hargrove's identification is without merit and his procedural default may not be excused.

### 2. Ground Two – State's Failure to Disclose Evidence

Jones's second ground for relief includes several allegations that the State failed to disclose favorable evidence to him. In particular, Jones contends that the State failed to disclose: (a) a photographic line-up that included Jones; (b) the fact that prosecution witness Hargove had a conviction for first degree tampering; and (c) the identity of a witness who allegedly spoke with Mr. Bailey, the wife of robbery victim Ms. Becherer. The State argues that Jones's second ground is procedurally defaulted. The State further contends each subpart of this second ground lacks merit. For convenience, the Court will refer to Jones's second ground as his Brady/Giglio claims because they relate to an alleged failure to disclose exculpatory and impeachment information.

The Court agrees with the State – Jones procedurally defaulted his Brady/Giglio claims. The record indicates that Jones raised these arguments in his *pro se* 29.15 motion, (Resp. Ex. G at 15), but they were not included in his amended 29.15 motion, (id. at 41-48), or on appeal from

---

[7] Mr. Hargrove also made an in-court identification of Jones and stated that the "only person [he] saw that day for real that [he] kn[e]w [he] seen was Tommy…Tommy Jones." (Resp. Exh. A at 325)

the denial of his 29.15 motion. (Resp. Ex. H). Therefore, Jones abandoned his second ground and procedurally defaulted this claim. See Sweet, 125 F.3d at 1150.

In order to overcome default, Jones must demonstrate "cause and prejudice" or a "manifest injustice," demonstrated by "newly discovered evidence of actual innocence." Coleman, 501 U.S. at 750. Jones has failed to overcome the procedural default. Moreover, unlike his first ground, Jones does not appear to assert that post-conviction counsel was ineffective in this regard. The decision of appointed post-conviction counsel not to include certain grounds for relief in an amended Rule 29.15 motion does not by itself constitute cause. Armstrong v. Iowa, 418 F.3d 924, 927 (8th Cir. 2005). Nonetheless, the Court will broadly construe Jones's § 2255 petition as if he had argued ineffective assistance of his Rule 29.15 counsel, and briefly consider the merits of each of Jones's Brady/Giglio arguments.

### a. Failure to Disclose Photo Line-Up

Jones contends that the State suppressed and failed to disclose a photo line-up that included him as a participant and which was shown to Mr. Hargrove. As an initial matter, Jones's argument in this regard is confusing. Jones has a copy of the photo line-up in question and does not explain how or when he got it.[8] Even assuming that Jones obtained a copy of the photo line-up after trial, but before his Rule 29.15 motion, he has not shown a credible Brady violation.

---

[8] In his traverse, Jones states that "[t]his photo-line up evidence was never disclosed to Petitioner and still hasn't [been]." (ECF No. 39 at 14) The trial transcript indicates that the existence of the photo line-up was discussed during Mr. Hargrove's testimony. (Resp. Exh. A at 325) Thus, the information was disclosed, perhaps in a tardy manner, but it was disclosed. See United States v. Gonzales et al., 90 F.3d 1363, 1368 (8th Cir. 1996) ("Where the prosecution delays disclosure of evidence, but the evidence is nonetheless disclosed during trial, Brady is not violated.") (citation omitted).

It is well settled that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). To establish a Brady violation, "a defendant must show that the government suppressed evidence that was favorable to the defendant and material either to guilt or to punishment." United States v. Heppner, 519 F.3d 744, 750 (8th Cir. 2008). The evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).

As noted above, there is no reasonable probability that a timely disclosure of the photo line-up would have altered the result in Jones's trial. The trial court rejected Ward's challenge to the identification evidence in the case as if Jones too had objected. (Resp. Exh. A at 422-23) Moreover, Jones does not explain how the photo-line-up was unduly suggestive or how the procedures used may have resulted in a misidentification at trial. Finally, as already explained herein, the record demonstrates that Mr. Hargrove was familiar with Jones before he was asked to identify him, mitigating any risk of misidentification. See Omar, 786 F.3d at 1109-10.

Based on the existing record, and assuming that the State failed to disclose the photo line-up, there is no reasonable probability that, had the evidence been disclosed, the result of Jones's trial would have been different. Therefore, even if Jones had not defaulted this failure to disclose issue, he would not be entitled to habeas relief.

**b.     Failure to Disclose Hargrove's Conviction for Tampering**

The second component of Jones's Brady/Giglio claim is that the State failed to disclose Mr. Hargrove's previous conviction for tampering and that this affected his counsel's ability to

properly cross-examine the witness.  Similar to federal law, in Missouri some convictions are admissible for the purpose of impeaching a witness.  It is well-established that failure to disclose important impeachment information may deprive a criminal defendant of a fair trial.  See Giglio v. United States, 405 U.S. 150, 155 (1979).

Jones cannot overcome his procedural default of this issue because he cannot show any prejudice.  In this case, the State disclosed Hargrove's tampering conviction during its direct examination of Hargrove.  (Resp. Exh. A at 316)  While the State's disclosure may have been tardy, it did not deprive Jones of a fair trial.  Jones cannot show that, had the conviction been disclosed earlier, that "evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  Kyles v. Whitley, 514 U.S. 419, 435 (1995).  Stated differently, Jones has not credibly explained how an earlier disclosure of Hargrove's conviction would have changed any aspect of his case.  See United States v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996) ("Where the prosecution delays disclosure of evidence, but the evidence is nonetheless disclosed during trial, Brady is not violated.") (citation omitted); Barns v. Dormire, 2013 WL 530907 at *7 (E.D. Mo. Feb. 12, 2013) (quoting Gonzales).  Furthermore, Jones alleges that he would have used the tampering conviction in order to impeach the witness, but the State impeached Hargrove with his conviction during its case-in-chief.  (ECF No. 1-1 at 8; Resp. Exh. A at 316).  Therefore, even if Jones had not defaulted this failure to disclose issue, he would not be entitled to habeas relief.

   c. **Failure to Disclose Witness Identity**

As his final Brady/Giglio claim in ground two, Jones contends that the State failed to disclose the identity of a presumably favorable witness.  Jones argues that this witness was someone who spoke with Bruce Bailey, the husband of robbery victim Mary Becherer, while Mr.

Bailey was speaking with a 911 dispatcher. According to Jones, "Bailey's initial description of [the truck] was 'black.' It wasn't until the unknown witness who was at the Becherer robbery scene told witness Bailey, No, the truck is maroon.'" (ECF No. 1-1 at 8). According to Jones, he was constitutionally prejudiced by the State's failure to disclose this unknown witness.

This claim is meritless. There is no suggestion in the record that the State withheld any exculpatory information regarding the identity of any witness. Jones provides no indication that the State knew the name or any other identifying information regarding this witness.

More importantly, the record indicates that the police tapes were disclosed and 911 tapes were played at trial. (Resp. Exh. A at 421, Resp. Exh. B at 19) Hence, Jones arguably enjoyed the very benefit of the testimony this unknown witness would have provided. Of course, as the State points out, this witness's testimony may actually have been incriminating and not exculpatory because the witness would have been another person who would have been able to describe Jones's truck. (ECF No. 15 at 22) There is no Brady violation if the undisclosed evidence is not exculpatory. See Gonzales, 90 F.3d at 1368. Accordingly, even if Jones's claim had not been defaulted, it would fail on the merits.

### 3. Ground Three – Prosecutorial Misconduct

In his third ground for relief, Jones accuses the State of prosecutorial misconduct in eliciting witness testimony regarding Jones's post-arrest statement to Police Officer Scott Ecker. The State contends that this ground has been procedurally defaulted and lacks merit. The Court agrees that the ground has been defaulted. Again, out of an abundance of caution, the Court will address the merits of Jones's claim of prosecutorial misconduct.

On the night of the Becherer and Nickolai robberies, the police attempted to stop the truck Jones was driving because it matched the description of the getaway vehicle used in the

robberies.  Jones attempted to flee.  Upon being stopped and arrested, Jones stated to the arresting officer, "I didn't rob anybody" or "I didn't rob anyone."  (Resp. Exh. A at 132)  During its case-in-chief, the prosecutor elicited testimony from the officer – Scott Ecker – regarding this statement.  (Id.)  Jones contends this was improper.  Jones argues that the prosecutor had made a promise to the trial court that he would not be introducing evidence of either defendants' statements "after taken into custody and after he was advised of any warnings applicable, any in-custody statements."  (ECF No. 1-1 at 9)

Jones's argument fails factually and legally.  As Jones recognizes, the prosecutor promised not to introduce post-Miranda statements of either defendant.  (Resp. Exh. A at 145)  The prosecutor did not break that promise.  The record is abundantly clear that the prosecutor introduced only Jones's pre-Miranda spontaneous statement upon being arrested.  Jones made later statements which were not introduced.[9]  Hence, the Prosecutor did not break any promise regarding Jones's statements.

The record demonstrates that the pre-Miranda statement that was introduced was constitutionally admissible as it was not made in response to custodial interrogation.  See Miranda, 384 U.S. at 478.  The record does not support a contrary conclusion or any inference that the statement was other than voluntary.  Therefore, the Court agrees that Jones's post-arrest statement was properly admissible against him at trial.

Accordingly, Jones's claim of prosecutorial misconduct is refuted by the record.  Therefore, even if Jones's had not defaulted his third ground, it would have failed on the merits because it is both legally and factually insufficient.

### 4.     Ground Four – Denial of Motion for Judgement of Acquittal

---

[9] Jones also told police that his friend "Project" had robbed someone, and that he would not snitch on Project.  (Resp. Exh. G at 44)

Jones's fourth ground for relief is that the trial court plainly erred in overruling his motion for a judgment of acquittal at the close of all evidence. Jones raised this claim on direct appeal and the state appellate court denied his claim. (Resp. Exh. F at 5) Since Jones has exhausted the availability of state court remedy through one full round of litigation, this Court may properly consider Jones's fourth ground. Wayne v. MBPP, 83 F.3d 994, 998 (8th Cir. 1996).

A "state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim." Jackson v. Virginia, 443 U.S. 307, 321 (1979). The relevant inquiry is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. The Missouri Court of Appeals correctly identified this as its standard of review. Thus, this Court may only grant relief if that court's application of the law was unreasonable. Cole, 623 F.3d at 1187. The Court concludes that the Missouri Court of Appeals decision reflects a reasonable application of federal law. Therefore, Jones's fourth ground cannot be sustained.

Jones contends that the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence. Jones's argues that there was insufficient evidence to support his first degree robbery conviction (Count 3), and his armed criminal action conviction (Count 4). Jones's argument rests on alleged inconsistencies in Alfred Hargrove's statements, Ms. Becherer's identification, Mr. Bailey's initial description of the getaway vehicle, and the inability of the police to pull fingerprints off the abandoned gun.

Jones's arguments suggest that he would like this Court to reweigh the evidence. This Court must give deference to the trier of fact and view the evidence in the light most favorable to the prosecution. See Jackson, 443 U.S. at 321; see also Cole, 623 F.3d at 1187 ("'[A] determination of a factual issue made by a State court shall be presumed to be correct' in a federal habeas proceeding.") (quoting 28 U.S.C. § 2254(e)(1)); Evans v. Luebbers, 371 F.3d 438, 441 (8th Cir. 2004). This Court will not and cannot reweigh the evidence. This is especially true given the deferential standard of review mandated by the AEDPA, 28 U.S.C. § 2254(d). See Cole, 623 F.3d at 1187 (habeas relief is available only if the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of facts in light of the evidence presented in state court"). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions.").

As explained by the Missouri Court of Appeals, "[a] conviction for first-degree robbery … require[d] the State to show [Jones], acting in concert with another, forcibly stole property from another while using or threatening the use of what appeared to be a deadly weapon. Section 569.020." (Resp. Exh. F at 4) Similarly, "a conviction for armed criminal action … require[d] the State to show [Jones], acting in concert with another, committed first-degree robbery with the assistance of a deadly weapon. Section 571.015" (Id.) As Missouri has eliminated the distinction between principals and accessories, to make a submissible case of accomplice liability, the State had to show that Jones associated himself with the venture or participated in Ward's crime in some manner. (Id. citing State v. Beggs, 186 S.W. 3d 306, 313

(Mo. App. W.D. 2005)).  Any evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction.  (Id.)

This Court's scope of review is extremely limited.  See Sera v. Norris, 400 F.3d 538, 543 (8th Cir. 2005).  When viewing the evidence in the light most favorable to the state, the record reflects that the Missouri Court of Appeals decision was not unreasonable.  As that court explained, there was sufficient evidence that a reasonable trier of fact could have concluded that Jones assisted Ward in furtherance of the Becherer robbery by driving the getaway vehicle.  A brief review of the evidence supports such a conclusion.

Mary Becherer positively identified Uvone Ward as the man who robbed her at gunpoint, forcibly stole the contents of her purse, and escaped in a pick-up truck driven by another person. (Resp. Exh. A at 278, Exh. F at 4)  Later that evening, a person later identified as Jones was observed driving a pick-up truck with Ward as his passenger.  When the police attempted stop that truck, Jones fled and tried to get away.  During the ensuing car chase, Jones slowed the truck so that Ward could toss his gun out of a window and then flee on foot.  (Resp. Exh. A at 126-28, Exh. F at 4-5)  Jones did not surrender after Ward ran away.  Rather, Jones drove again, fleeing from the police at a high rate of speed.  Upon being stopped, and before being questioned about the robberies, Jones spontaneously stated, "I didn't rob anybody," or "I didn't rob anyone." (Resp. Exh. A at 130, Exh. F at 5)  Additionally, although not relied upon by the Missouri Court of Appeals, Jones was also identified as the driver by Alfred Hargrove.

The State produced evidence that:  (1) Ward forcibly stole the contents of Ms. Becherer's purse; (2) while using or threatening the use of a gun; and (3) Jones was knowingly acting in concert with Ward by driving the getaway vehicle.  Such evidence would support a jury verdict on both the first-degree robbery and armed criminal action charges.  As noted by the Missouri

Court of Appeals, Jones's statements upon being arrested "showed his awareness that the police were chasing him because of his connection to a robbery." (Resp. Exh. F at 5) Moreover, the Missouri Court of Appeals was reasonable in concluding that Jones flight from the police provided circumstantial evidence of his knowledge that he was involved in Ward's crimes. (Id. citing State v. Morris, 41 S.W.3d 494, 497 (Mo. App. E.D. 2000)). See United States v. Eggleton, 799 F.2d 378, 380-81 (8th Cir. 1986) (explaining that evidence of flight is admissible because it "tends to prove consciousness of guilt") (citation omitted); see also United States v. Webster, 442 F.3d 1065, 1066-67 (8th Cir. 2006) (explaining that the possibility of other motives to flee does not render inadmissible evidence of flight as tending to prove consciousness of guilt). Finally, the Missouri Court of Appeals reasonably concluded that, because the evidence showed Jones knew Ward had robbed Becherer and thereafter acted as a getaway driver, there was sufficient evidence of knowing participation by Jones. (Id. citing State v. Meuir, 138 S.W.3d 137, 144 (Mo. App. E.D. 2000)). The fact that some evidence was circumstantial, or may have allegedly been weak (e.g., Hargrove's inconsistent statements) or uncorroborated (e.g., a lack of fingerprints on the pistol) does render the Missouri Court of Appeals' decision suspect in any regard. Rather, it was the jury's job to weigh the all of the evidence, including that which may have been circumstantial, conflicting, or uncorroborated. See Jackson, 443 U.S. at 319.

The Missouri Court of Appeals' decision that the evidence was sufficient to support Jones's convictions was not unreasonable. Jones's fourth ground must be denied.

### 5. Ground Five – Jury Instruction Numbers 11 and 12

For his fifth ground, Jones contends that the trial court plainly erred in submitting jury instructions 11 and 12 to the jury. (ECF No. 1-1 at 11) The State contends that Jones is

procedurally barred from relief on this ground because he did not object at the time of trial nor did he raise any claim of error in his motion for new trial. (ECF No. 15 at 30)

Until very recently, it was unclear in this circuit whether procedural default barred a habeas petitioner from pursuing a claim which the state court had limited its review to plain error. The State's response discusses this conflict in considerable detail. (ECF No. 15 at 31-32) In particular, there was an intra-circuit split on the issue. Some panel decisions held that plain error review in the state appellate court cures a default, thereby permitting habeas review. See, e.g., Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000). Other panels held the opposite – state plain error review does not cure a default. See, e.g., Toney v. Gammon, 79 F.3d 693, 699-700 (8th Cir. 1996). See also Jackson v. Norman, 2014 WL 3767895 at *5-6 (E.D. Mo. Jul. 31, 2014) (noting intra-circuit split).

Earlier this year, the Eighth Circuit resolved this split by applying the earliest precedent rule of Mader v. United States, 654 F.3d 794 (8th Cir. 2011) (en banc). See Clark v. Bertsch, 780 F.3d 873, 875-76 (8th Cir. 2015). Prior to Mader, "panels in the Eight Circuit were permitted to choose which line of authority to follow in the event of an intra-circuit panel split." Clark, 780 F.3d at 876 (citing cases). Mader, however, "clearly put this rule to rest; the court directed that future panels are to determine and follow the earliest precedent in the event of an intra-circuit panel split." Id.

In Clark, the Eighth Circuit applied the earliest precedent rule to the split involving the proper treatment of defaulted habeas claims that receive plain error review in state appellate courts. The Court determined that the earliest panel decision was Hayes v. Lockhart, 766 F.2d 1247, 1253 (8th Cir. 1985). See Clark, 780 F.3d at 876. Hayes held that a state court's plain

error review did not cure procedural default. Therefore, federal habeas review is possible only if the petitioner demonstrates cause and prejudice for the default. Id.

This Court is bound by Clark and, therefore, concludes that Jones's fifth ground has been defaulted. Jones has not alleged facts to show cause and prejudice sufficient to overcome that default. Therefore, the ground must be denied.

Even if the Court were able to address the merits of Jones's claim of instructional error, that claim would not provide him with a basis for habeas relief. The Missouri Court of Appeals thoroughly reviewed Jones's instruction claim for plain error and found none. Although Jones's takes issue with Instruction Nos. 11 and 12, the Missouri Court of Appeals considered those instructions in the context of Instruction No. 10 as well. The instructions in question read as follows:

**Instruction No. 10:**

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

**Instruction No. 11:**

As to Count 3, if you find and believe from the evidence beyond a reasonable doubt:
First that on or about October 18, 2005 in the City of St. Louis, State of Missouri, Tommie L. Jones, acting with Uvone Ward, took a woman's purse and contents which was property owned by Mary K. Becherer, and
Second, that Tommie L. Jones, acting with Uvone Ward, did so for the purpose of withholding it from the owner permanently, and
Third, that Tommie L. Jones, acting with Uvone Ward, in doing so used physical force on or against Mary K. Becherer for the purpose of forcing Mary K. Becherer to deliver up the property, and
Fourth, that in the course of taking the property, Uvone Ward displayed or threatened the use of what appeared to be a deadly weapon, and

Fifth, that Uvone Ward was a participant with defendant in the commission of the offense, then you will find Tommie L. Jones guilty under Count 3 of robbery in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find Tommie L. Jones not guilty of that offense.

**Instruction No. 12:**

As to Count 4, if you find and believe from the evidence beyond a reasonable doubt:

First, that Tommie L. Jones, <u>acting with</u> Uvone Ward, committed the offense of Robbery First Degree, as submitted in Instruction No. 11, and

Second, that Tommie L. Jones, <u>acting with</u> Uvone Ward, knowingly committed that offense by, or with, or through, the use or assistance, or aid, of a deadly weapon, then you will find Tommie L. Jones guilty under Count 4 of Armed Criminal Action

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find Tommie L. Jones not guilty of that offense.

(Resp. Exh. B at 39-41) (emphasis supplied)

The gist of Jones's issues with Instruction Nos. 11 and 12 is that those instructions used the phrase "acting with Uvone Ward" to describe Jones's alleged involvement in the crimes. (Resp. Exh. F at 7-8) Jones contends that the instructions should have used the phrase "aided or encouraged," and should have also required the jury to specifically find that Jones "had the purpose of promoting or furthering the commission of robbery and armed criminal action." (Id.) The State conceded, and the Missouri Court of Appeals agreed, that Instruction Nos. 11 and 12 do not conform to the Missouri Approved Instructions-Criminal 3d. (Id. at 8-9)

Under Missouri law, a "[f]ailure to comply with the Missouri Approve Instructions-Criminal and the applicable Notes on Use is presumed prejudicial." (Id. at 9 citing <u>State v. Rathmann</u>, 148 S.W.3d 842, 844 (Mo. App. E.D. 2004)). In reviewing this issue under the plain error standard, the Missouri Court of Appeals concluded that "there was no manifest injustice because [Jones] cannot show the instructional error affected the jury's verdict." (Id.) According

to that court, Instruction No. 10, in effect, cured the error because that instruction "properly set out the accomplice liability instruction by itself." (Id.) Furthermore, according to the Missouri Court of Appeals, the instructions as actually given, which included the "acting with" phrase, imposed a "higher burden than if the jury had been properly instructed …." (Id.) Finally, the Missouri Court of Appeals found that the evidence showing Jones aided or encouraged Ward's crimes was strong. (Id.) Accordingly, the trial court did not plainly err in giving Instruction Nos. 11 and 12. (Id.)

The Missouri Court of Appeals analysis of the jury instructional issue is neither incorrect nor unreasonable. It is well-settled that "the fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). Rather, the appropriate inquiry on habeas review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. at 72 (internal quotations omitted). See also McFarland v. Wallace, 2015 WL 1347001 at * 27 (E.D. Mo. Mar. 19, 2015) (citing Estelle); Thompson v. Dormire, 2014 WL 3767859 at *7 (E.D. Mo. Jul. 31, 2014) (citing Estelle); Hawkins v. Roper, 2007 WL 2332280 at *13 (E.D. Mo. Aug. 13, 2007) (explaining "that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions") (quoting Estelle, 502 U.S. at 67).

In Thompson v. Dormire, supra, this District Court considered an accomplice liability instructional error similar to that raised by Jones. The Court explained that "[t]o prevail on a claim of instructional error in a verdict director, a [habeas] petitioner must show both that the verdict director was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the state of its burden of proving every element of the crime beyond a reasonable doubt." Thompson, 2014 WL 3767859 at *7 (quoting Waddington v.

Sarausad, 555 U.S. 179, 190-91 (2009)).  In Thompson, the Court denied relief.  In concluding

that the instructions did not affect the verdict, the Court relied on the same accomplice liability

instruction that was given as Instruction No. 10 in Jones's case.  Id.

The analysis applied by the Missouri Court of Appeals in Jones's case is entirely

consistent with the analysis applied by this Court in Thompson.  Accordingly, even if Jones's

instructional error was not defaulted, it would fail on the merits.  The decision of the Missouri

Court of Appeals was neither incorrect nor unreasonable.  Jones's fifth ground is denied.

## 6.      **Ground Six – Ineffective Counsel – Failure to Object**

For his sixth ground, Jones argues that he received ineffective assistance counsel because

his trial counsel did not object to the introduction of his post-arrest statements, and because his

appellate counsel failed to raise that issue on appeal.  The State contends that Jones has

procedurally defaulted this ground.  The Court agrees.  In any event, as analyzed in greater detail

with respect to his first and third grounds, Jones's post-arrest statements were relevant,

voluntary, and lawfully admissible against him at trial.  Therefore, his attorneys cannot now be

faulted for failing to challenge those statements.  Likewise, Jones cannot show any prejudice

attributable to the alleged failure to object.  See Strickland, 466 U.S. at 694.

## 7.      **Ground Seven – Ineffective Counsel – Failure to File Motion to Sever**

Jones's seventh and final ground for habeas relief is based on trial counsel's failure to file

a motion to sever his trial from that of co-defendant Uvone Ward.  Jones raised this claim in his

Rule 29.15 motion and subsequent appeal.  Thus he has exhausted his state remedies.  Wayne, 83

F.3d at 998.

The gist of Jones's argument is that co-defendant Ward was charged with two robberies –

the Becherer robbery and the Nickolai robbery.  Jones, on the other hand, was not charged in the

Nickolai robbery. According to Jones, evidence of the Nickolai robbery would have been inadmissible against him if the defendants were tried separately. Jones also argues that Ward's trial strategy resulted in bias against Jones. Jones summarily concludes that the State used evidence to against Ward to convict Jones. Jones's claim is without merit.

In addressing this issue, the Missouri Court of Appeals applied the <u>Strickland</u> standard. (Resp. Exh. J at 4-5) Missouri courts, like federal courts, generally give "the trial court … discretion in deciding whether or not to sever the trials" of joint defendants. (<u>Id.</u> at 5 citing <u>State v. Merrill</u>, 990 S.W.2d 166, 174 (Mo. App. W.D. 1999)). <u>See</u> <u>also</u> <u>Zafiro</u>, 506 U.S. at 541 (noting the issue involves a discretionary balance between judicial economy versus the risk of prejudice). "Mutually antagonistic defenses are not prejudicial <u>per</u> <u>se</u>." <u>Id.</u> at 538. <u>See</u> <u>also</u> <u>Jenner v. Class</u>, 79 F.3d 736, 741 (8th Cir. 1996) (explaining that a habeas petitioner "bears a heavy burden" in "challenging the trial court's failure to sever his trial from that of his codefendant," and that a federal court cannot grant relief "unless [Petitioner] can establish that the failure to grant severance rendered his trial fundamentally unfair") (internal quotations omitted).

The Missouri Court of Appeals concluded that Jones's counsel was not ineffective in failing to seek severance because Jones failed to show "a probability for prejudice existed in the joint trial." (Resp. Exh. J. at 5 citing <u>State v. Tate</u>, 658 S.W.2d 940, 946 (Mo. App. E.D. 1983)). The court found that Jones and Ward had "compatible defenses." (<u>Id.</u> at 5-6) For example, Ward's defense was "mistaken identity," while Jones's defense was he could not be sufficiently identified. (<u>Id.</u> at 6) The Missouri Court of Appeals concluded that, rather than being prejudiced by a joint trial, Jones's defense was likely aided by Wards' testimony. (<u>Id.</u>) In his testimony, Ward denied involvement in the robberies, denied being in the truck with Jones on the day of the

robbery, and claimed that the pick-up truck Ms. Nickolai described did not match the truck Jones was driving.  (Id.)  Having reviewed the record, the Court cannot say that the Missouri court's analysis was unreasonable.

The fact that some of the evidence at trial applied against Ward only does not, by itself, provide a basis for severance under Missouri law.  As explained by the Missouri Court of Appeals, "evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged may be admissible to present a complete and coherent picture of the events that transpired."  (Resp. Exh. J at 6 quoting State v. Primm, 347 S.W.3d 66, 70 (Mo. Ct. banc 2011))  This ruling is consistent with federal law.  See, e.g., United States v. Williams, 95 F.3d 723, 731 (8th Cir. 1996) (explaining that facts "that form the factual setting of a crime" are admissible to assist in presenting the jury with a "coherent picture of the facts of the crime[s] in issue").  See also Harris v. Bowersox, 184 F.3d 744, 752-53 (8th Cir. 1999).

In analyzing this issue, the Missouri Court of Appeals noted that the two robberies "occurred in short succession and involved the same robber and a maroon pickup truck."  (Resp. Exh. J. at 6)  Furthermore, that court concluded that Jones had failed to show that, even if the matters had been tried separately, evidence of the Nickolai robbery would not have been admitted against Jones.  Therefore, according to the Missouri Court of Appeals, Jones could not show that his trial counsel's conduct was constitutionally deficient in failing to seek a severance.  (Id. at 6).

Finally, even if one were to assume any reasonable attorney representing Jones would have moved to sever the trials, Jones cannot sustain his burden of showing Strickland prejudice.  Jones cannot show that a properly filed severance motion would have been granted, let alone that the outcome of his case would have been materially different.  As the Missouri Court of Appeals

explained, Ward's attorney did request a severance and the trial court denied that request. Jones has offered not credible reason to conclude that the trial court would have granted his motion to sever when it denied co-defendant's motion. (Id. at 7)

For the foregoing reasons, this Court cannot say that the Missouri Court of Appeals' adjudication of Strickland to Jones's severance claim "was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented in state court." Cole, 623 F.3d at 1187. Jones's seventh ground is denied.

**C.      Request for Evidentiary Hearing**

Jones has requested an evidentiary hearing on his petition. (ECF Doc. 39 at 19-20) His request, however, does not call into question the sufficiency of the existing record. An evidentiary hearing is not warranted in this matter because the existing "record already contains all the facts necessary to resolve [Jones's] claim[s]." Johnston v. Luebbers, 288 F.3d 1048, 1060 (8th Cir. 2002) (explaining that habeas petitioners are entitled to evidentiary hearings only under narrow circumstances). See also 28 U.S.C. § 2254(e)(2).

## III.  CONCLUSION

The Court concludes that Jones is not entitled to federal Habeas relief on any ground presented in his Petition. Most of Jones's grounds have been defaulted and Jones cannot overcome the default. As for his not defaulted grounds, Jones failed to establish that his state court proceedings were contrary to, or involved an unreasonable application of, clearly established federal law, or involved an unreasonable determination of the facts presented in those proceedings. See 28 U.S.C. § 2254(d). An evidentiary hearing is not warranted because the existing "record already contains all the facts necessary to resolve [Jones's] claim[s]." Johnston

v. Luebbers, 288 F.3d 1048, 1060 (8th Cir. 2002) (explaining that habeas petitioners are entitled to evidentiary hearings only under narrow circumstances). See also 28 U.S.C. § 2254(e)(2).

Finally, Jones has failed to make a substantial showing of the denial of a constitutional right sufficient to justify the issuance of a Certificate of Appealability. See 28 U.S.C. § 2253(c)(2). See Miller-El v. Cockrell, 123 S. Ct. 1029, 1040 (2003) (standard for issuing a Certificate of Appealability) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Tommie Lee Jones for habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability will not be issued by this Court.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this  _29th_  day of July, 2015.


/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE